Final case this morning is MyPaQ Holdings v. Samsung Electronics, 2023-2024. Carmichael. May it please the court, Jim Carmichael for appellant MyPaQ. This is my partner Steve McBride at the council table and we also have Brad Close who is the vice president of MyPaQ, the patent owner. I'm going to focus on the three most glaring legal errors that the PTAB made which are the claim construction of core state, pawn startup and processor system all for de novo review by this court. First core state, the legal error that was committed by the PTAB here was failing to give credit to the inventors acting as their own lexicographer. The first time the specification uses the claim term core state, it uses the parenthetical with quotation marks as C state to explicitly define core state for the rest of the specification. This is on column 5, right? Yes, you are correct Judge John. But that's in the context of a discussion that began with now we are going to talk about the advanced configuration and power interface and now everything is being talked about within what's an ACPI rather than being definitional. I would submit that if you want to know what the core state is within ACPI, we are just telling you in that parenthetical. That's not definitional. Our position is that it is a definition. It's consistently used that way throughout the patent and most importantly, that is such a common convention in our field, in all legal documents, even in the first sentence of the PTAB's decision under review, they use this convention six times. You say a word, you put it in parentheses and quotation marks and you define it. There's no getting around it. Whatever part of the discussion it is, the most important part, I think, it's the first time in the specification that core state is mentioned and that's where it's defined. As is typical, you don't redefine it again later every time you use it. Let me understand what difference it would make if we adopt your construction and say the board was, I guess, too broad in its construction. Thank you, Judge Stark. The difference is that the petitioner never contended that the patent claims would be unpatentable if our construction is correct. That's because the references they put forth have nothing to do with the ACPI in general or the ACPI C states in particular. So even though it seems like ACPI, the C states, there's like a potentially infinite number of C states, that is, it seems like it's itself a very broad concept. If your claims were limited to the broad ACPI C states, it's unclear to me why their prior art wouldn't still be a problem for you. You're saying they haven't even made that argument. That's correct. The specification uses the two terms interchangeably. For example, at the 514 patent, column 26, it refers to ACPI C state, C0, but then calls it core state, C0. So they're using those two words to mean the same thing. And the party's experts both agreed that core state means C states in this patent. When specifically asked what is the plain and ordinary meaning of core states in this patent, the petitioner's own expert said core state, they, the inventors, call it a C state. He also then went on to say the ACPI describes the C states, which are the core states. What do you make of column 9, lines 11 through, I don't know, 14? For examples indicating a system operational state, further examples indicating a system operational state include, without limitation, a signal providing a performance state or a core state of a processor, such as a P state or C state. Yes, thank you for bringing that to our attention, Judge Toronto, because that is something that the board cited, but then they stopped halfway through the quotation. As I just did. So the board, the entire quotation, or the relevant part of this sentence goes on a good deal. Yes, it's a long sentence, that's right. And starting with where the board started, it says a core state of a processor, such as a C state, that's where they stopped, but it goes on to completely have a different meaning than if you just stopped reading there, which is, of course, inappropriate. So the entire thought here is core state of a processor, such as a C state indicating, for example, that. And then there are six examples of what a C state can indicate. So that is what is the such as, is the examples of what a C state can indicate. And there's six specific technical examples here. So it's not examples of what a core state is, it's examples of different types of C states. It's examples of what different C states can indicate. That's right. But it's not saying, in your reading, that C states are one example of a core state, and there may be a whole bunch of other things that could be a core state in this patent. Right, it's not saying that at all, which is, of course, why the board and the petitioner both put a period in the middle of the sentence when they quoted it to you. To have a different meaning than what's actually being said in the patent. Are you suggesting that the claims are limited to basically something within this ACPI industry standard? Yes, they are limited to. There's no reference to that standard in the claim language, unless, I guess, your argument is that by saying core state, it's in fact saying we are now within the world of the ACPI standard. Yes, that's correct. This is explicitly defined in the specification that a core state is an ACPI C state. Because of this explicit lexicographic definition, and as we pointed out, Judge Stark, the lack of petitioners saying that they could possibly win under our definition, the board definition should be reversed, the court should construe core states as C states, and no remand for further application of that is necessary. That issue goes to just two claims in the 514 and two claims in the 759 patent, correct? Yes, that's correct. And are you saying, let's just, for the sake of argument, if I agreed with you on this argument you've made on the claim construction, but nothing else in your briefs, I can still, as a matter of law, say your claims have not been proven unpatentable, or might it need to be remanded for other issues that weren't reached with respect to those four claims? Yes, so our position is that you certainly should state that the correct construction is C states, it's an explicit definition, and that under that definition the claims are patentable and there's no need for a remand for the board to apply the correctly stated definition. But are there any unresolved issues that maybe the board didn't reach as part of their challenge to those four claims that are implicated on the core states limitation? So there is another ground based on a reference called Huang that the board did not reach. So we would have to remand at best for you on those claims, correct? I know that's the practice of the court, but I disagree with it. Do you have some authority that I could rely on? Sure, I do. And the reason that you wouldn't remand for issues that the board didn't address is the 12 month deadline that the board has under 35 U.S.C. section 316, and we're already at 28 months now. It is too late for the board to make a decision on that. There are two, now admittedly... We've said the opposite of that, right? We said that the one year rule does not preclude decisions on remand, which would be crazy. I'm not familiar with there being a precedential decision from the court stating that. I'm aware of two dissents by Judge Radina agreeing with me, which I can give you those sites. How could that system work? Oh, how it could work is the board can follow the statute, and under 35 U.S.C. 316... It could never decide anything on a remand? No, that's not true. They have to issue a final written decision under 316 within 12 months, and on the Hawaiian ground, they didn't do that. That doesn't say that you couldn't remand in another case that... On the same ground? Yes, exactly.  So, moving to upon startup. I see I have 30 seconds left. Upon startup. The board legally erred there by construing upon startup to mean during operation, which would begin at startup. The problem with that is the specification defines two separate times. This is at column 13, line 39 to 43, appendix page 129. It says either one, upon power up of such a system, or two, during its continued operation. So, both of those time periods, one and two, they might be contemplated by the specification, but claims 13 and 18, dependent claims 13 and 18, specifically narrow that down to only time one, upon power up, and not two, which is during the continued operation. And so, in the end, the court should rule that the proper construction of upon startup means during startup, not after. With four minutes left, I guess I'll reserve that for rebuttal. We will save it for you. Thank you. Ms. Dreyer. Good morning, Your Honor. May it please the court. Beginning with core state. The board properly construed the core state limitation based on the intrinsic record and the meaning of core state to a person of ordinary skill in the art in light of the specification. MIPAC is attempting to argue that there was a lexicographic redefinition of the term core state, but the references to core state in this specification don't include the types of hallmarks or indicia of lexicography that this court has relied on, and that MIPAC has even pointed to in the case law in which it relies upon. This specification uses embodiment language. As Judge Toronto, you rightly pointed out, it uses language including the phrase such as, it uses language in describing the figure, an embodiment of processor core states. It calls it a representative system design. It also references core state without referencing C state. At column 22, line 65, indicating a processor core state. So there are examples in the specification where the specification discusses core state and doesn't include any reference to C state. With regard to the particular pairing. I think Mr. Carmichael said that the very first use of the two-word phrase core state in the spec is column 5, line 44. And that's immediately followed by the parenthetical, quote, C state, unquote. And that that would mean, suggest two things. That that is kind of definitional language. And second, once you've defined it, you don't need to keep referring to C state because it already bears the meaning. I disagree that that's definitional language. That parenthetical doesn't include the hallmarker that would inform a person of ordinary skill in the art that they're setting forth a definition. For example, the signifier IE. We grammarians know that IE usually indicates definitional language. EG usually indicates exemplary language. And none of the parentheticals here that reference C state use that IE definitional signifier. And for lexicography to apply, there have to be words that are clear and manifest words of exclusion. So what is it you think is being done in the parenthetical? Why are they even bothering? It's simply providing an example with reference to the ACPI standard. So it's EG. It's EG. On what basis would we say a person of skill in the art would read in EG as opposed to IE? Because the standard for lexicography is that it has to be so clear and manifest that a person knows that IE is the only thing that is indicated here. And even in this court's Skin Medica case that my PAC cites in their brief, the court said IE is definitional, but it alone is not absolute. You have to give a full effect to the specification. And here the embodiment language, the such-as language, the representativeness language elsewhere in the specification indicate that the applicant here was not lexicographically redefining the term. Let's look up a little bit higher in column five around lines 22, 23. For example, the advanced configuration and power interface, paren, quotation marks, ACPI. Is that a definition? My PAC references the way in which in grammar, sometimes we set forth in parentheses with a quotation mark and abbreviation, the way that that's done sometimes in legal briefing. I actually think that it's the inverse here. So ACPI in this is the phrase that's inside of the parenthetical there is setting forth the word that's defining the phrase outside of the parenthetical. The way that, for example, Samsung here, that's an abbreviation that's describing the rest of the terminology. That's not, Samsung is not the definition. The definition, it's inverted. Is it saying that for purposes of this patent, whenever you see ACPI, you should read in and understand that's the same thing as advanced configuration, power interface. I may not have read the words that are written there. It's an abbreviation, certainly in this context for ACPI. It's an abbreviation. Notwithstanding that the sentence begins, for example. I think that it's fair that it's an abbreviation, that ACPI is abbreviating the advanced configuration and power interface specification. I don't know there to be another example of advanced configuration and power interface language. It does use the phrase for example, but there's no other examples of ACPI discussed in the specification. There are references in the specification of other things that a core state could indicate. Core state is not always used synonymously with C state. Could you give us your best example of where you think core states is being used more broadly than C states in a patent? Yes, Your Honor. I would say the first two examples are at column 22, line 65, where it references core state, a processor core state broadly, without expressing it as a C state. The other example would be at column 26, line 7 through 12, in which it describes core state as a value greater than or equal to 1. What was the second one? The second one would be column 26, lines 7 through 12, where it describes core state as a value greater than or equal to 1. And then the claim language itself reflects the applicant's intent to use a broader claim here than C state. It reflects the applicant's intent to claim broadly, to claim any core state, which indicates the activity level of a processor, consistent with what our expert said and with what the board found. The other place is at column 5 in that discussion, Judge Stark, that you pointed to. Towards the bottom of that discussion, beginning at lines 44, although it references core state and it used the exemplary language C state, it goes on to describe how core states are under software operating system control and affect its level of power consumption from another perspective. And what the specification tells you when you're reading it in full and in its context is that core state is indicating activity level of the processor. It reflects whether it's fully operational, whether it's in some varying level of sleep mode or less than fully operational, and that's consistent with what the board found and with what our expert testified to, that a core state is reflecting activity level of a processor. That's exactly what Chagny discloses, the prior art, and so the board had substantial evidence to find that Chagny discloses a core state given the broad language used in the claim. The board does its claim construction at A12 and 13, right, on the core states dispute. It seemed to me the only argument they made is maybe the only argument you're making today, that there's exemplary language elsewhere in the patent, and that would undermine whatever one might think of the parenthetical. Do you agree that that's the only argument that the board gives us or the only point the board makes on behalf of this construction? Yes, Your Honor. That's the only argument the board makes on behalf of the construction because of the exemplary language used in the rest of the specification, and that's consistent with this court's case law. Again, in SkinMedica, the court said IE alone, even that definitional signifier in a parenthetical alone is not sufficient to satisfy this court's standard for lexicography. Looking at the rest of the specification, and it was important in that case that giving it definitional language comported with, quote, each and every reference in the specification to the term, and that's simply not the case here where the specification refers to core state without reference to C state. Was there material, I guess, in the record, I'm not sure there is in this two pages in the board decision, about general usage in the relevant art of the phrase core state? That would be with reference to what our expert said, that the general usage in the art with reference to core state is that it's indicating the activity level of the processor. That's distinguished. What is a performance state? In the patent, the patent describes a performance state also as a power state, which is somewhat confusing because the ACPI standard describes a C state as a power state, so it creates some ambiguity to adopt MIPAC's construction, but the patent describes a performance state as being achieved by setting the core input voltage and the clock rate of the processor, and that conveys information about performance or about power, and so it distinguishes core state from a performance state in that capacity as well, and that's at column five starting at line 29. Have we said anything about the degree of clarity that's required to define a term in a patent depending on whether it's really just restating the plain and ordinary meaning that one of the skill in the art would already ascribe to it versus it's something different than that? Have we, like you keep citing to SkinMedica, is that a case where maybe the patentee was trying to define a term as something other than what one of the skill in the art might otherwise think it was? It actually was, Your Honor. In that case, the construction was whether to include, to exclude what one of ordinary skill in the art would understand about the phrase culturing in three dimensions. And so how do you see this case? Is it if the patentee was trying to define what core states was, would that be a definition to be consistent with what one of skill in the art would think or to be inconsistent or slightly different from what one of skill in the art would think? What MIPAC is arguing is somewhat unclear, Your Honor, because MIPAC says that the plain and ordinary meaning applies and that the plain and ordinary meaning is its lexicographic definition. And I don't think that's consistent with this court's case law. I think this court says plain and ordinary meaning applies unless the patentee sets forth a different meaning, its own definition that's different than the plain and ordinary meaning, and then that meaning will apply. And here we don't agree that the plain and ordinary meaning of core state is a thief state. So we would disagree that plain and ordinary meaning can be used to reach MIPAC's construction. Have we ever said, though, that one, in writing a patent, is not free to define a term consistent with its plain and ordinary meaning? No. Just to be careful. I don't think this court's case law has said that. But definitely in looking at what MIPAC's argument is for lexicography, they're arguing that lexicography applies. We disagree that the core state has a plain and ordinary meaning as a thief state. And we also disagree that the standards for lexicography have been satisfied here. To your questions about remand, the board didn't reach the alternative grounds for the Wong reference, so we would argue that that would need to be considered on remand. The statutory arguments that MIPAC's counsel raised I don't believe were raised in the briefing. Have we, in a precedential decision, said that a remand by the board, an activity on remand to the board, can take place after one year, even on an issue that the board initially did not decide? I don't have a decision at my fingertips, Judge Toronto, but I'm fairly certain that there are many decisions from this court in which you've remanded for the board to consider alternative grounds that were... Didn't need to be decided initially because of how it was decided, yeah. Yes, Your Honor. And especially in the case when there's a new claim construction that is issued. We think that it would be appropriate for the board to consider and make fact findings in the first instance based on that new construction. And I'll just also point out that the board noted that MIPAC admitted below that core state includes a fully operational state. This is at Appendix 40 through 41 of the board's decision. Chadney discloses a fully operational state. It says that its state can be 100% or fully loaded. That's at 1056, Column 4, Lines 21. But you're not arguing that if we were to adopt their proposed instruction that the claims may be invalid under Chadney. You never made that argument to the board. You're not making it to us, correct? We didn't explicitly argue below whether Chadney discloses the ACPIC state. But the board did note that MIPAC admitted that Chadney's disclosure is that it has a fully operational core state. And the board could determine on remand whether that's sufficient. So you would ask that, worst case for you, we remand for the board to consider the weighing grounds as well as reconsider the Chadney grounds under the construction if you were to lose on the construction. Yes, Your Honor. Yes. Briefly to respond to MIPAC's arguments upon startup, the board did not engage in any claim construction and construe the term to mean, as MIPAC argued in its opening brief, any time after startup. You won't find that construction in the board's decision because the board, as with the other terms that MIPAC raises on appeal, applied the agreed upon plain and ordinary meaning. That's reflected at Appendix 8 of the decision. And the board found that Chadney sufficiently disclosed, sufficiently rendered obvious, excuse me, because the upon startup claims are for a ground of obviousness, that Chadney's disclosure of providing the signal when the device 290 was powered up and providing it continuously, including every millisecond, would have rendered it obvious to provide it upon startup. We think that finding is supported by substantial evidence. Unless there are any further questions. Thank you, Counsel. Thank you, Your Honors. Mr. Carmichael has some rebuttal time if we need to. Thank you. And I enjoyed the interesting discussion about plain and ordinary meaning versus lexicographic. And in this case, they're both the same. You end up at the same place. Core states means C states. But starting with plain and ordinary meaning, when a petitioner's own expert was cross examined and asked point blank, what is the plain and ordinary meaning of a core state, he said, C state. That's at appendix page 2036, lines 15 to 23. So there seems to be no dispute that that is plain and ordinary meaning. And even if there were a dispute on it, we have our lexicographic definition just to make sure. Like Judge Stark hinted at. Petitioner discussed the Skin Medica case from this court where there was a parenthetical that had the phrase IE in it. It did not have quotation marks in it like we do. And as you can see from the very first sentence of the board's decision, and of course all the other many times your honors have seen it, when you put something in parentheses, that's how you define something. It's very clear. Perhaps if there had been quotation marks in Skin Medica, they wouldn't have had a debate. Now petitioner suggested for the first time that what we really mean was EG, but when the patent applicant here wanted to use EG, they did. They used it 29 times throughout the specification in parentheses, EG. Not this time. This time it's just a quotation mark to show exactly what they meant. In Skin Media, as was brought up, the parenthetical statement seemed to contravene the normal definition of what was being used. The term there was beads, and in parentheses it says IE two dimensions, and that was considered to be contravening the plain and ordinary meaning. But as we've discussed, their expert and our expert both agree that the meaning of core states here is. Can I just take you back for one second to the expert you cited, 2036? So this is what's your understanding of the plain and ordinary meaning of the term core state answer? Also, the patent discusses it in figure 12, and it's also in column 25, lines 20 to 28 to 35. The core state of the processor is the state of the processor based on its activity level, which are identified in those figures, in that figure, with different core states in terms of they call it a C state. Yes, they call it a C state. In figure 12, which figure 12 does. That's not conceding that the expression core state in the patent as a whole is defined as C state. Figure 12 says C state right on it. Right. So when the expert said they call it C state. In that figure. I'm taking that to mean the inventors, they call it a C state. And yes, that figure has C0, C1, C2, C3, C states, which I pointed out on my first time I stood up, is used interchangeably with core state 0, C0, or core state C1. Sometimes they call it core state, sometimes they call it C state C0. Clearly those two things are the same thing. And I see my time is up. And I just want to thank the panel. Thank you. Thank you, Mr. Carmichael. Thank both counsel. Case is submitted and that concludes today's arguments.